1

2

3

O

JS - 6

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  A.A.,  a minor, by and        )  Case No. CV 15-06009 DDP (MRWx)
    through his Guardian Ad        )
12  Litem, CATHERINE ABARCA,       )
                                   )
13                    Plaintiff,   )
                                   )  **TRIAL ORDER AFFIRMING**
14       v.                        )  **ADMINISTRATIVE DECISION**
                                   )
15  GOLETA UNION SCHOOL            )
    DISTRICT, a local Education    )
16  Agency,                        )
                                   )
17                    Defendants.  )
    _____ )
18                                 )
                                   )
19

20        Presently before the court is Plaintiff's Complaint seeking

21  reversal of a decision by the California Office of Administrative

22  Hearings finding that (1) Plaintiff did not meet his burden to show

23  that Defendant Goleta Union School District ("the District") failed

24  to timely provide him with an independent psychoeducational

25  assessment and (2) the District adequately showed that Plaintiff

26  was not entitled to an independent evaluation by the evaluator of

27  his choosing, Dr. Ann Simun.  Having considered the submissions of

28  the parties and conducted a court trial, the court affirms the

 Administrative Law Judge's decision and adopts the following Order.

**I.   Background**

     In 2013, the District conducted a psychoeducational assessment of Plaintiff and concluded that he was eligible for special education due to autism, with secondary eligibility for intellectual disability.  (Administrative Record ("AR") 576-77.) The District's Individualized Education Program ("IEP") team later reversed the eligibility categories, listing "intellectually disabled" as the primary category and "autism" as a secondary disability.  (AR 583.).

     The Individuals with Disabilities Education Act ("IDEA") and its implementing regulations require that parents who disagree with a school district's educational assessment of a child be allowed to obtain an independent educational evaluation at public expense.  20 U.S.C. §1415(b)(1); 34 C.F.R. § 300.502.[1]  On May 4, 2014 Plaintiff's parent ("Parent") requested a "comprehensive developmental assessment."  (AR 606.)  District official Dr. Margaret Saleh ("Saleh") responded on May 13 and attached Santa Barbara County's Special Education Local Plan Area ("SELPA") independent educational evaluation guidelines, including a non-exhaustive list of approved evaluators.  (AR 607-646.)

     On May 15, Parent reiterated her request for a "comprehensive developmental assessment."  (AR 610.)  On May 19, Saleh sent a

---

     [1] "Public expense means that the public agency either pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent . . . ." 34 C.F.R. § 300.502(a)(3)(ii).

1  letter explaining that the district would fund a

2  "pyschoeducational" evaluation, and again attached the SELPA's

3  guidelines.  (AR 612.)  Among the guidelines were "cost criteria"

4  limiting the amount the SELPA would pay to a qualified independent

5  evaluator.  Saleh's letter further explained that if Parent

6  selected an evaluator who did not meet the cost criteria, Parent

7  would have to "show why it is necessary that an assessor with

8  unique qualifications is warranted."[2]  (Id.)   On May 23, Parent

9  selected Dr. Ann Simun to conduct the independent evaluation.  (AR

10  647).

11      Dr. Simun's office informed the District that Simun charged

12  $5,000 for a psychoeduactional assessment, and intended to conduct

13  a $6,000 "neuropsychological assessment" of Plaintiff.  Simun would

14  not agree to accept the District's maximum fee.  (AR 673-74.)   On

15  May 30, the District informed Parent that Dr. Simun did not meet

16  the SELPA cost criteria, and asked parent to provide an

17  "explanation of circumstances unique to [Plaintiff] that might

18  justify funding" an over-guidelines cost evaluation, including

19  "complex medical, educational, and/or psychological needs such that

20  there are no other qualified evaluators."  (AR 677-78.)

21      On June 2, 2014, Parent responded that Dr. Simun was "uniquely

22  qualified . . . due to her extensive training and expertise

23  assessing children and adolescents with complex and challenging

24  needs.  Dr. Simun has broad experience measuring the IQ of non-

25  verbal and low-speech students. . . .  Given that [Plaintiff] has a

26

27      [2]  At the time Saleh wrote the letter, the independent
28  evaluation cost was capped at $3,500.  That amount, as the District
    informed Parent, was later increased to $4,500.

3

diagnosis of Classic Autism, is virtually non-verbal, and uses an [Augmentative Alternative Communication] device to communicate, it is essential that he be evaluated by a professional who understands the neurological, communicative, and behavioral challenges of autism . . . No other Neuropsychologist in the region has the education, training, and experience of Dr. Simun." (AR 679.)

On June 17, the District responded that the circumstances identified by Parent were not unique enough to merit deviation from the cost guidelines, and asked Parent to provide additional information. The District explained that it would reconsider its cost criteria determination if Parent could show unique circumstances "such as a complex medical, health, or educational needs, such that Dr. Simun is the only qualified assessor." (AR 684.) On June 23, Parent reiterated essentially the same reasons as in her June 2 letter, stating that the District should either fund the assessment by Dr. Simun or file for a due process hearing.[3] (AR 726, 728.)

On July 7, the District again disagreed that Parent had identified "unique circumstances" warranting a deviation from the Santa Barbara SELPA's independent evaluator cost criteria, and again indicated that it would agree to Dr. Simun's above-cap fee if Parent could provide further information justifying the departure. (AR 733-34.) On July 14, Parent informed the District that she was proceeding with an evaluation by Dr. Simun, and declined to produce any further information. (AR 748).

---

[3] If a school district does not provide an independent evaluation at public expense, it must demonstrate at a hearing that the independent evaluation does not meet the educational agency's criteria. 34 C.F.R. §502(b)(2)(ii).

1   The District filed for a hearing two weeks later, on July 28.

2   Student also later filed a request for hearing.  The California

3   Office of Administrative Hearings Administrative Law Judge ("ALJ")

4   consolidated the two requests and addressed two issues:  (1) "Did

5   District deny Student a free appropriate public education by

6   failing to timely provide Student with an independent psychological

7   evaluation following Parent's May 2014 request" and (2) "Was

8   Student entitled to an independent psychosocial or

9   neuropsychological evaluation by an evaluator of Student's choice

10  which exceeded District's cost criteria?"  (AR 797.)  After holding

11  a five-day hearing, the ALJ issued a twenty-eight page decision

12  finding in the District's favor on both questions.  Plaintiff now

13  seeks review of that decision.

14  **II.  Standard of Review**

15  Plaintiff, as the party challenging the administrative

16  decision, bears the burden of showing by a preponderance of the

17  evidence that the ALJ erred.  L.M. v. Capistrano Unified School

18  District, 556 F.3d 900, 910 (9th Cir. 2008) (citing Clyde K. v.

19  Puyallup School District No. 3, 35 F.3d 1396, 1398 (9th Cir.

20  1994)).  District court review of a state administrative IDEA

21  decision is less deferential than that generally afforded to other

22  agency actions.  Ojai Unified School District v. Jackson, 4 F.3d

23  1467, 1471-72 (9th Cir. 1993).  The court must nevertheless give

24  "due weight" to administrative judgments regarding education

25  policy.  Id.  "Thorough and careful" administrative findings are

26  entitled to particular deference, in the court's discretion.  Id.;

27  see also J.L. v. Mercer Island School District, 592 F.3d 938, 949

28  (9th Cir. 2007).  Here, given the length of the administrative

5

hearing, which included live testimony from multiple witnesses, and the thoroughness of the ALJ's analysis, this court will review the ALJ's decision with substantial deference.  See, e.g. Cupertino Union School District v. K.A., 75 F.Supp.3d 1088, 1098 (N.D. Cal. 2014) ("A court should give particular deference where the hearing officer's administrative findings are thorough and careful or are based on credibility determinations of live witnesses." (internal quotation marks and citations omitted)); Z.F. v. Ripon Unified School District, No. 2:11-CV-02741-KJM-GGH, 2013 WL 127662 at *3-5 (E.D. Cal. Jan. 9, 2013) (affording substantial deference where ALJ held three-day hearing and issued twenty-three page decision).

## III. Discussion

The parties' various arguments relate to two main questions: (1) did the ALJ correctly determine that the District's independent educational evaluation cost criteria were reasonable and, if so, (2) did Plaintiff fail to demonstrate unique circumstances warranting a deviation from the cost cap.  To the extent Plaintiff also contends that the ALJ "never determined Plaintiff's issue" (Opening Brief ("OB") at 21:1), namely that the District denied Plaintiff a free appropriate public education by failing to timely provide him with an independent evaluation, that assertion is not supported by the record.  The ALJ explicitly found that the District reasonably offered to fund a qualifying evaluation within two weeks of Parent's initial request, and that the District reasonably filed for a hearing within two weeks of the breakdown of the parties' discussions regarding the independent evaluator.  (AR 817-18.)  Thus, there is no merit to Plaintiff's assertion that "[t]he ALJ's Decision did not address the issue raised by Plaintiff

1 regarding the District's agreement to the [independent evaluation]

2 and its failure to timely provide it . . . ."[4]   (OB at 21:7-9.)

3       There is, of course, no dispute that the District did not

4 provide Plaintiff with an evaluation by Dr. Simun.  If Plaintiff is

5 correct that the District's cost criteria were not reasonable, or

6 that Plaintiff did adequately demonstrate unique circumstances

7 meriting a departure from those criteria, the District's continuing

8 refusal to pay for Dr. Simun's evaluation would necessarily also

9 constitute a failure to timely provide an independent evaluation.

10 The court therefore proceeds to analyze the two questions

11 underlying this matter.

12       A.    Reasonableness of the Cost Criteria[5]

13       The ALJ heard live testimony from SELPA Director Dr. Jarice

14 Butterfield regarding the establishment of the District's cost

15 cap.[6]    Butterfield testified that the SELPA sets cost ceilings by

16 calling various types of education professionals throughout

17 Ventura, San Luis Obispo, and Santa Barbara counties and inquiring

18 as to what those assessors charge for different types of

19 evaluations.  When determining the appropriate cost cap, the SELPA

20 excluded outliers on both the high and low ends of the spectrum,

21 but did not simply average the rates of the professionals polled.

22

23       [4] The paragraph of the ALJ's decision to which Plaintiff cites
24 discusses unique circumstances, not the timeliness of the
District's actions.  (AR 821.)

25       [5] Although the parties and the ALJ refer to "cost criteria,"
26 it appears that only a single criterion, the cost ceiling
applicable to independent psychoeducational evaluations, is at
27 issue.

28       [6] Although the cost criteria at issue are established by the
SELPA, the District adopted the SELPA's guidelines.

1  Butterfield futher testified that the SELPA updates its information
2  annually.

3      Plaintiff argues that Butterfield's testimony was inadmissible
4  hearsay, and that the ALJ erred by considering it.[7]  Instead,
5  Plaintiff suggests, the District should have been required to
6  elicit testimony from educational assessors themselves about they
7  rates they charge, or to submit documentary evidence obtained
8  directly from the assessors.  (Reply at 2-3).  Plaintiff's argument
9  fails for several reasons.  First, it is not clear that Butterfield
10 gave hearsay testimony.  Although Butterfield did testify as to the
11 rates assessors told her they charged, her testimony was not
12 offered for the truth of what evaluators charged, but rather to
13 illustrate that the SELPA engaged in a reasoned, systematic, and
14 regular process when establishing its cost caps.  Furthermore, the
15 SELPA's compilation of assessors' rates, or its annual updates to
16 that compilation, may have been admissible under the business
17 records exception.  Cal. Evidence Code § 1271.  In addition, it is
18 unclear whether Butterfield was called upon to testify in an expert
19 capacity.  See, e.g., Maatuk v. Guttman, 173 Cal. App. 4th 1191,
20 1198 (2009) ("[A]n expert may rely on any information of the type
21 reasonably relied on by an expert, even if it is hearsay . . . .").
22 Lastly, and perhaps most importantly, Plaintiff's counsel
23 admittedly did not object to Butterfield's testimony at any point,
24 denying the ALJ of any opportunity to address the possibilities set

25

26

27      [7] Hearsay is admissible for certain purposes in IDEA
   administrative hearings.  N.R. ex rel. B.R. v. San Ramon Valley
   Unified School District, No. C 06-1987 MHP, 2007 WL 216323 at * 8
28 (N.D. Cal. Jan. 25, 2007); Cal. Gov. Code § 11513(d).

1  forth above, and waiving any admissibility argument Plaintiff may

2  now seek to present.[8]

3       For these reasons, this Court concludes that the ALJ, relying

4  primarily upon Dr. Butterfield's live testimony, did not err in

5  determining that the District's $4,500 cost ceiling was reasonable.

6       B.   Unique Circumstances

7       A parent seeking an independent educational evaluation that

8  exceeds a school district's reasonable cost cap is entitled to

9  demonstrate that "unique circumstances" warrant the above-ceiling

10  evaluation.  Letter to Kirby, 213 IDELR 233 (OSEP 1989).  The

11  District asked Parent repeatedly to explain Plaintiff's unique

12  circumstances, such as "complex medical, educational, and/or

13  psychological needs" or "complex medical, health, or educational

14  needs."  Parent responded that Dr. Simun's above-cap evaluation was

15  necessary because "[Plaintiff] has a diagnosis of Classic Autism,

16  is virtually non-verbal, and uses an [Augmentative Alternative

17  Communication] device to communicate."  The ALJ considered

18  documentary evidence as well as live testimony from Dr. Simun, Dr.

19  Perlman, Dr. Chidikel, Parent, parent's advocate Sandra Shove

20

21

22       [8] The ALJ also compared the cost cap to the rates charged by
23  two of Plaintiff's experts, Drs. Mitchel Perlman and Perry Passaro,
    as well as the rates charged by the District's expert, Dr. Dana
24  Chidikel.  The ALJ observed that Drs. Chidikel and Perlman did not
    conduct educational assessments in the relevant geographical area,
25  and that their rates therefore did not bear on the reasonableness
    of the District's cost ceiling.  The ALJ also stated that Dr.
26  Passaro's rates supported the reasonableness of the District's cap.
    Dr. Passaro, however, also did not conduct assessments in the
27  relevant geographical area.  Because the ALJ's conclusions were
    based primarily upon Butterfield's testimony, the slight
28  inconsistency in considering Dr. Passaro's rates but not those of
    the other experts does not undermine the ALJ's ultimate conclusion.

("Shove"), district evaluator Amanda Fox, and Dr. Saleh, and concluded that Plaintiff had not shown unique circumstances.

At the administrative hearing, Parent claimed that Plaintiff had a history of seizures, and that she had informed the District of the seizures.  The ALJ found Parent to be not credible.  The ALJ observed that Parent's testimony about when she notified District officials about the seizures was internally inconsistent and conflicted with IEP team notes.  (AR 799, 801, 803.)  Parent also never mentioned seizures to Dr. Simun, or in response to Dr. Saleh's inquiry about Plaintiff's unique circumstances, such as complex medical or health needs.  Parent also claimed at the that Plaintiff was performing tasks at home that he was not performing at school.  The ALJ found that testimony not credible as well, observing that school records indicated that Plaintiff was indeed performing those and similar tasks in a school setting.  (AR 805.) Plaintiff's argument that "the ALJ did not explain why she appeared not to believe the parent's reports" is therefore not supported by the record.[9]  (Reply at 8:23-24.)

Parent's advocate, Ms. Shove, helped Plaintiff determine that only Dr. Simun was qualified to evaluate student.  Plaintiff argues that the ALJ found Shove not credible because "she could not remember each and every reason she had rejected the individuals identified on the District's IEEE list and because the emails of her several contacts were not produced."  (OB at 23:10-13.)

_____

[9] The ALJ also found Parent not credible, at least in part, because Parent could not recall why other independent evaluators were not acceptable to her.  Parent testified that she relied on the opinion of her advocate and friend, Ms. Shove, whose testimony the ALJ also rejected, as discussed below.

Plaintiff significantly understates the ALJ's reasoning.  The ALJ observed that Shove was a long-time personal friend of Parent, that Shove had a pre-existing professional relationship with Dr. Simun, contacted only four independent assessors other than Dr. Simun, gave "vague" and "contrived" answers to live questions, and "went far afield in answering the questions posed to her."  (AR 803, 807-08, 822.)  The ALJ also observed that Parent selected Dr. Simun weeks before Shove ever contacted other independent evaluators, casting doubt about Parent and Shove's contention that their selection of Dr. Simun was necessitated by the lack of any other qualified evaluator.  (AR 822.)  Deferring to the ALJ's impression of Shove's demeanor, and considering the numerous questions regarding her objectivity, this court cannot conclude that the ALJ erred in discounting Shove's testimony.

The ALJ credited the opinion of District expert Dr. Chidikel over the opinions of Dr. Simun, who evaluated Plaintiff after examining him for three days, and Dr. Perlman, who did not meet with Plaintiff or review his records.  When a treating doctor's opinion is contradicted by another doctor, an ALJ may only reject the treating doctor's opinion for "specific and legitimate reasons supported by substantial evidence in the record."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Plaintiff argues that the ALJ should not have credited Dr. Chidikel's testimony because she violated professional guidelines by diagnosing Plaintiff without personally evaluating him.  (OB at 24.)  The court disagrees with Plaintiff's characterization.  Dr. Chidikel testified in an expert capacity as to the adequacy of Dr. Simun's testing and the uniqueness of Plaintiff's disabilities, not

11

1  in a diagnostic capacity.  The court also disagrees with

2  Plaintiff's assertion that the ALJ "failed to detail specifically

3  what numerous inconsistences and other problems there were with

4  [Dr. Simun's] report."  (Reply at 8:7-8 (internal quotations

5  omitted).)  The ALJ provided several particular critiques of Dr.

6  Simun's assessment.  The ALJ noted, for example, that Dr. Simun was

7  not able to complete the type of test she selected, and had to

8  abandon the testing several times before ultimately completing a

9  different kind of test.  (AR 809.)  The ALJ also observed that,

10  although Dr. Simun referred for the first time at hearing to the

11  possibility that Plaintiff had had seizures, nothing in Dr. Simun's

12  report, or her suggestion that a neurological evaluation might be

13  appropriate, suggested that Plaintiff might be having seizures or

14  that medical doctors should rule out seizures.  The ALJ further

15  relied upon Dr. Chidikel's opinion that Dr. Simun's erroneous use

16  of neuropsychological assessment tools and later adoption of other

17  methods led to inconsistent and unreliable results.  (AR 811.)  Dr.

18  Chidikel also opined that Dr. Simun's conclusions were not

19  verifiable because Dr. Simun failed to record test results, and

20  were otherwise not supportable by the data obtained.  (Id.)  The

21  ALJ's conclusions regarding Dr. Simun's testimony were therefore

22  supported by specific and legitimate reasons.[10]

23  _____

24      [10] Dr. Perlman also opined that Plaintiff's combination of
    autism and intellectual disability were not common.  (AR 821.)  The
25  ALJ's decision states that "more weight was given to District's
    witnesses because they reviewed Student's educational records, and
26  the ALJ observed their credible demeanor while testifying."  (Id.)
    Dr. Perlman testified by telephone, with the ALJ's permission.  To
27  the extent the ALJ held Dr. Perlman's telephonic appearance against
    him because it did not afford her the opportunity to observe his
28  demeanor, that would not be a legitimate reason to discount his
                                                    (continued...)

Plaintiff also briefly raises two additional, but unpersuasive arguments.  Plaintiff asserts that Ms. Fox, the District's evaluator, was unable to adequately evaluate Plaintiff and had "unanswered questions" about his abilities, and that her opinion regarding Plaintiff's limitations and their uniqueness, or lack thereof, should therefore have carried little weight.  First, the court is skeptical of Plaintiff's attempt to use alleged deficiencies in the District's evaluation as the basis for "unique circumstances" meriting an above-cap independent educational evaluation.  A parent's right to an independent evaluation presumes that the parent disagrees with the district's assessment.[11] 20 U.S.C. §1415(b)(1).  Were that disagreement alone sufficient to constitute "unique circumstances," that term would lose much of its meaning.  Second, Fox's assessment did not play a large role in the ALJ's conclusion.  Indeed, the only reference to Fox in the ALJ's conclusion regarding unique circumstances is that "Dr. Chidikel's testimony was corroborated by Ms. Fox and Dr. Saleh."  (AR 821.)

---

[10](...continued)
opinion.  As the ALJ stated, however, Dr. Perlman never reviewed Plaintiff's records, while the District's experts did.  Although Dr. Perlman's opinion regarding the rarity of an autism/intellectual disability combination did not necessarily require a review of Plaintiff's records, the ALJ legitimately favored the District's experts' opinions, informed by Plaintiff's records, of the uniqueness of his particular circumstances.

[11] A district may file for a due process hearing if it believes that its evaluation is appropriate.  34 C.F.R. § 300.502(b)(2)(i).  Here, the District did not file for such a hearing, but rather agreed to provide a qualifying independent evaluation.  Were this court to consider the District's implicit acknowledgment that a reasonable evaluator might come to a different conclusion to also be an indicator of "unique circumstances," districts might feel compelled to more frequently file for (b)(2)(i) hearings, unnecessarily multiplying IDEA proceedings and frustrating the purpose of the Act.

For that same reason, Plaintiff's argument that Dr. Saleh was not
qualified to render an opinion carries little weight.  The ALJ
referred to Dr. Saleh only in passing, and relied not upon her
expert opinion as an educational evaluator, but rather upon her
experience and background as a SELPA administrator, through which
she necessarily gained some familiarity with the frequency of
various disabilities and other circumstances.

Plaintiff bore the burden of demonstrating that his "unique
circumstances" justified a departure from the District's reasonable
cost cap on independent educational evaluations.  The ALJ provided
numerous specific and legitimate reasons why she discounted
Plaintiffs' experts' opinions, as well as those of Parent and Ms.
Shove, and gave more weight to the District's witnesses' opinions
that Plaintiff's circumstances were not unique.  Accordingly, and
giving substantial deference to the ALJ's credibility
determinations, this court concludes that the ALJ did not err.

C.    Issue Not Reached By This Court

Portions of the parties' briefing, and much of the discussion
at trial, concerned Plaintiff's argument that the District failed
to timely provide an independent educational evaluation by failing
to pay an amount up to its reasonable cost cap toward Dr. Simun's
above-cap fee.  The parties appear to agree that Letter to Thorne,
16 IDELR 606 (OSEP 1990), supports Plaintiff's position when it
states, "[I]f the total cost for an IEE exceeds the district's cost
criteria and there is no justification for the excess cost, the
cost of the IEE must be publicly funded to the extent of the
district's maximum allowable charge." Letter to Thorne, 16 IDELR
606 (OSEP 1990).  The District contends that Letter to Petska, 35

14

1  IDELR 191 (OSEP 2001) supersedes <u>Letter to Thorne</u> by stating, "If

2  the total cost of the IEEE exceeds the maximum allowable costs and

3  the school district believes that there is no justification for the

4  excess cost, the school district cannot in its sole judgment

5  determine that it will pay only the maximum allowable cost and no

6  further.  The public agency must, without unnecessary delay,

7  initiate a hearing to demonstrate that the evaluation obtained by

8  the parent did not meet the agency's cost criteria."   <u>Letter to</u>

9  <u>Petska</u>, 35 IDELR 191 (OSEP 2001).  Plaintiff responds that <u>Letter</u>

10 <u>to Petska</u> is not inconsistent with <u>Letter to Thorne</u>, as the former

11 does not state that a district cannot or need not fund an

12 independent evaluation up to the cost cap, but only forbids a

13 district from deciding to pay up to the cap, and no more, without

14 ever seeking an administrative determination that there is no

15 justification to exceed the cap.

16     The District further argues, however, that IDEA's implementing

17 regulations also forbid a district from paying only a portion of an

18 independent evaluator's fee.  Parents have the right to "an

19 independent educational evaluation <u>at public expense</u>."  34 C.F.R. §

20 300.502(b) (emphasis added).  The regulation defines "public

21 expense" as meaning "that the public agency either pays for the

22 full cost of the evaluation or ensures that the evaluation is

23 otherwise provided <u>at no cost to the parent</u>."  34 C.F.R. §

24 300.502(a)(3)(ii) (emphasis added).  Thus, the District argues,

25 the regulation prohibits a district from paying a portion of the

26 fee, even where the parent agrees to pay the balance.

27     It does not appear to the court that this issue was ever

28 presented to the ALJ, or that the issue is properly before this

15

1    Court.  Although Plaintiff sought to introduce evidence of certain

2    fee-splitting discussions with the District into the administrative

3    record, the ALJ denied that motion as improperly revealing the

4    substance of settlement discussions.  Plaintiff also sought leave

5    from this Court to supplement the administrative record with

6    evidence of those discussions.  (Dkt. 30, 21.)  Plaintiff did not,

7    however, suggest that the fee-splitting discussions concerned a

8    liability question or implicated a question of regulatory

9    interpretation, but rather sought to introduce the evidence in the

10   event it later became relevant to a determination of attorney's

11   fees.  (See Dkt. 39.)

12        Accordingly, this court does not reach the question whether a

13   school district must, or may, pay a portion of an independent

14   educational evaluator's fees up to the district's reasonable cost

15   cap where the evaluator's fee exceeds that cap and the parent

16   agrees to pay the difference.

17   **IV.  Conclusion**

18        For the reasons stated above, the ALJ's decision in favor of

19   the District is AFFIRMED.

20

21   IT IS SO ORDERED.

22

23   Dated: February 22, 2017

24                                        DEAN D. PREGERSON

25                                        United States District Judge

26

27

28

                                   16